IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>APPROXIMATELY $33,720 IN UNITED STATES CURRENCY SEIZED FROM KENNETH SETTLE ON SEPTEMBER 11, 2023 AT THE CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT | Civil No. 3:24-cv-00026 |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

### INTRODUCTION

1. This is a civil action *in rem* against $33,720 in United States currency seized from Kenneth Settle ("Settle") on September 11, 2023 at the Charlotte-Douglas International Airport (the "Currency").

2. Law enforcement first intercepted a FedEx shipment of narcotics from northern California to Settle and his purported sneaker company, Kays Kustoms. Then, Settle and his associate, Juan Coleman, were caught attempting to transport roughly 38 pounds of vacuum-sealed marijuana and 22 pounds of edible mushrooms in suitcases through the Charlotte airport after returning from northern California. Now, as to the instant seizure, Settle was flying to San Jose when a drug detection K9 alerted to his checked bag, which was found to have both a small amount of marijuana and the $33,720 in cash hidden among clothes and a toiletry kit. Settle's

trips to California follow the well-established pattern of a drug trafficker transporting cash (*i.e.* the Currency at issue here) from the east coast out to California to purchase narcotics, and then either shipping the narcotics back or transporting them via checked luggage on the return air travel.

3. Indeed, when Settle frequently travels to California (14 round trips between Charlotte and the San Francisco/San Jose area from September 2022 and June 2023), a FedEx package similar in weight and shipping cost (and sometimes identical of) the intercepted narcotics shipment to Settle is usually sent from Hayward, CA, to either Settle or Coleman during the duration of Settle's stay in California.

4. Moreover, if Settle was conducting a legitimate sneaker business as he claimed, there is little reason for Settle to store and then transport large sums in cash across the country—incurring even just the risk that his checked bag with $33,720 could have simply been lost by the airline in transit—when any cash needed could simply be withdrawn from bank locations there upon arrival. *See, e.g., United States v. $183,791.00 in U.S. Currency*, 391 Fed. Appx. 791, 795 (11th Cir. 2010) ("Although a large amount of cash alone is insufficient to meet the government's burden, it is highly probative of a connection to some illegal activity . . . legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities. In contrast, drug rings do often utilize couriers to transport large amounts of cash in rubber-banded bundles.")

(internal quotations and citations omitted).

5. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## NATURE OF THE ACTION

6. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

7. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

8. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

9. The Currency has been seized and is now within the Western District of North Carolina.

10. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen Brown, this action seeks the forfeiture of all right, title, and interest in the

Currency.

## FACTS GIVING RISE TO FORFEITURE

*The October 28, 2022 seizure of narcotics from Settle's FedEx package*

11. During an overnight air-parcel sort at a FedEx location in Pineville, NC, a suspicious looking package was placed in a lineup and K9 Alvin, a properly trained and certified narcotics detection canine, positively alerted to the package.

12. The listed sender of the package was "Coleman, K&J Detailing LLC" at Coleman's Charlotte, NC address, and the recipient was "Settle, Kays Kustoms LLC" at Settle's Charlotte, NC address—though the package itself had actually been sent from Hayward, California.

13. Alhough the phone numbers listed on the package for the sender and recipient were not in service/inoperable (one of the common characteristics of narcotics shipments), TFO Brown obtained Kenneth Settle's actual phone number by investigative means. Upon contacting him, Settle denied expecting a package from California.

14. The package was searched and found to contain fifteen (15) pounds of vacuum-sealed marijuana inside of Tupperware containers:



***The June 26, 2023 seizure of narcotics from Settle at the CLT airport***

15. During a June 26, 2023 interdiction operation at the CLT airport, while luggage from a United Airlines flight from Denver, CO, was being loaded from a baggage cart to the baggage claim carousel, K9 Cali, a properly trained and certified narcotics detection canine, alerted to the odor of narcotics from a suitcase. The baggage tag for the suitcase indicated it belonged to Juan Coleman.

16. After he observed Coleman removing the suitcase from the baggage carousel, TFO Cerdan approached Coleman, and TFO Altizer approached Settle, who was speaking with Coleman and appeared to be traveling with him.

17. Settle had one small suitcase with him, and removed two suitcases from

the baggage carousel. Settle, among other things, admitted there was marijuana in one of his suitcases and "just gummies" in the other.

18. Settle and Coleman were traveling from California through Denver. Coleman was found to have approximately 16 pounds of marijuana in his suitcase. Settle had roughly 22 pounds of vacuum-sealed marijuana in one suitcase and roughly 22 pounds of edible mushrooms in the other. Settle's small bag was found to have a large quantity of mylar packaging (designer bags) for the marijuana.



***The September 11, 2023 currency seizure from Settle at the CLT airport***

19. On September 11, 2023, law enforcement at the Charlotte airport was conducting a narcotics interdiction operation on outbound domestic flights to known

drug-source locations, which included Delta Airlines flight 2260 bound for San Jose, CA.

20. The interdiction operation included, among other things, the deployment of K9 Cali, a properly trained and certified narcotics detection canine, to conduct open-air sniffs of checked suitcases prior to their being loaded onto Delta flight 2260.

21. K9 Cali was deployed to conduct an open-air sniff of the area and a group of suitcases that had been pulled.

22. K9 Cali alerted to the odor of narcotics from a suitcase whose baggage tag indicated that it belonged to Settle.

23. TFO Brown recognized Settle's name, and was aware of him from his prior drug trafficking activities detailed above.

24. The suitcase was detained and brought to the boarding area of Gate A5 so that Settle could be located.

25. Aware of Settle's appearance from previous body-worn camera footage, TFO Brown saw Settle in the boarding area and asked to speak with him regarding the suitcase. Settle agreed and followed TFO Brown to an adjacent hallway for more privacy.

26. When TFO Brown asked him what the purpose of his trip to San Jose was, Settle responded that he was traveling to San Jose to buy sneakers for his business, Kays Kustoms LLC (the same business to which a FedEx package of 15 pounds of marijuana had been shipped and intercepted).

27. TFO Brown informed Settle that a narcotics canine alerted to his suitcase.

28. Settle advised that there was money in the suitcase but no narcotics. Settle initially stated there was $15,000 in the suitcase.

29. TFO Brown requested consent to search Settle's suitcase and cross shoulder bag, which Settle granted as to both.

30. Settle unlocked his suitcase for law enforcement, and Settle unzipped his shoulder bag and showed TFO Brown the contents.

31. TFO Brown observed a large stack of currency in the shoulder bag, and Settle stated that the currency was an extra $9,000 for sneakers.

32. In the suitcase, TFO Brown located rubber-banded currency in multiple denominations hidden inside clothing, shoes, and a shaving kit.





33. TFO Brown also found a package containing 3.5 grams of marijuana.

34. TFO Brown asked Settle how long he would be in San Jose and where he would be staying.

35. Settle stated he would be in San Jose for three days and he did not have a hotel reservation.

36. When TFO Brown asked Settle how much currency he was traveling with, Settle responded "probably a little over thirty (thousand)".

9

37. TFO Brown asked Settle how he sells his sneakers. Settle claimed he sells his sneakers in person and on Instagram through all cash sales, and the Currency was derived from his sneaker business.

38. After discussing Settle's prior encounter at the CLT airport, TFO Brown asked Settle if he had a bank account and if so, what was a normal balance. Settle responded "five to then thousand" and showed TFO Brown an account on his phone with a balance of just over $2,000 in it.

39. TFO Brown asked Settle if he still had Settle's permission to continue searching the shoulder bag, and after Settle responded affirmatively, removed the previously observed Currency and noted it was also rubber-banded in multiple denominations consistent with the currency hidden in the suitcase.

40. Settle produced his ID to TFO Brown, who observed that the address on the license matched the address to Kays Kustoms.

41. TFO Brown advised that the currency was being seized and explained the seizure process to Settle.

***The Currency's second K-9 alert and deposit***

42. The Currency was subsequently placed into an independent lineup of six scent boxes.

43. K9 Rambo, who is a properly trained and certified drug detection canine, was deployed to conduct a sniff of the blind lineups.

44. As to the lineup, K9 Rambo positively alerted to the odor of narcotics only on the boxes containing the Currency seized from Settle.

45. Law enforcement took the seized Currency to Loomis where it was counted and determined to total $33,720, in $100 (68 bills), $50 (70 bills), $20 (1,146 bills), and $10 (50 bills) denominations. The Currency's placement during travel (hidden among clothes and the suitcase), rubber-banding, and denominations are consistent with that involved in narcotics trafficking.

*Settle's employment history*

46. A review of Settle's employment and earnings records indicates that Settle last worked in the first and second quarter of 2022 at Amazon, earning $10,205.86 (with a $19,220.16 yearly salary in 2021).

47. Settle collected unemployment payments from the NC Department of Revenue from June 2020 through January 27, 2022.

*Settle's travel and package shipment history*

48. Settle has been found bringing narcotics back from the West coast through the Charlotte Airport, and has had FedEx shipments of narcotics addressed to him intercepted.

49. Settle made 14 roundtrip flights to and from the San Francisco/San Jose area between September 2022 and June 2023.

50. Settle's trips to California align with numerous FedEx shipments from Hayward, California (in the San Jose/San Francisco area) to either himself or Coleman.

51. The total weight of these shipments was 251 pounds, with a total cost of $2,685.88—making it highly unlikely that Settle was going out to California to buy

sneakers and shipping them back.

52. For example, Settle arrived in San Francisco, CA on October 4, 2022. On October 5 and October 6, 2022, two packages were shipped via FedEx to Coleman and Settle in Charlotte from Hayward, CA. Both of these packages were identical in weight and shipping to the previously-intercepted Fedex package from Hayward, CA, to Settle containing vacuum-sealed narcotics. Settle then returned to Charlotte on October 7, 2022.

53. Put simply, Settle's travel and shipment pattern is indicative of a drug trafficker transporting drugs or illicit proceeds.

## FIRST CLAIM FOR RELIEF – THE $33,720 IN CURRENCY
### (21 U.S.C § 881(a)(6))

54. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 53 above as if fully set forth herein.

55. The $33,720 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

56. Upon information and belief, the following persons may claim an interest in the Currency seized on September 11, 2023:

Kenneth Settle
5015 Roundstone Way, Apt. 308
Charlotte, NC 28216

*With courtesy copy to:*

Edward Johnson III
Edward Johnson & Associates P.C.
1945 S. Halsted St., Ste. 309
Chicago, IL 60608

## CONCLUSION AND PRAYER FOR RELIEF

57. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 10th day of January, 2024.

                          DENA J. KING
                          UNITED STATES ATTORNEY

                          <u>/s/ Seth Johnson</u>
                          J. Seth Johnson
                          Texas Bar No. 24083259
                          Assistant United States Attorney
                          Suite 1650, Carillon Building
                          227 West Trade Street
                          Charlotte, North Carolina 28202
                          Telephone: (704) 338-3159
                          Email: seth.johnson@usdoj.gov

## **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 9th day of January, 2024.

/s/ Stephen Brown
Task Force Officer
Homeland Security Investigations